McPherson v. The Atlantic & Pacific Railroad Company.

McPHERSON *et al.* v. THE ATLANTIC AND PACIFIC RAILROAD Co., *Garnishee of the Osage Valley & Southern Kansas Railroad Co., Appellant.*

1. **Extent of Garnishee's Liability.** Process of garnishment can not be made to operate so as to annul the contracts of parties, or to subject a party to recovery by the creditor of his creditor, when the latter could not himself recover.

2. **Landlord and Tenant**: CONTRACT: TAXES. Where by the terms of a lease the lessee was entitled, from time to time, to deduct from the rental all taxes imposed upon the leased property, which the lessee either had paid or might be liable to pay, and there was at the time no law imposing a personal liability for taxes on any one, but any taxes levied upon the property were a lien upon it; *Held*, that the stipulation amounted to an appropriation of a reserved fund out of the rental to the payment of the taxes.

*Appeal from Cooper Circuit Court.*—HON. T. M. RICE, Judge.

Plaintiffs recovered judgments against the defendant, the Osage Valley & Southern Kansas Railroad Company, for the aggregate sum of $8,384. Executions were issued and the Atlantic & Pacific Railroad Company was garnished as debtor to the defendant.

The cases were afterward consolidated and tried as one case. It appeared by the pleadings and proofs that the Osage Valley & Southern Kansas Railroad Company had, in 1867, leased its unfinished road to the Pacific Railroad, which had finished it and afterward assigned its interest

in the lease to the garnishee. By the lease, the lessee was to pay quarterly, as rental, thirty-five per cent of the gross earnings, "provided that before such thirty-five per cent. of the said gross receipts is paid over, there shall be deducted therefrom all taxes now or at any time hereafter imposed under authority of either the United States, State, city or county laws, upon the whole or any part of said demised road, its buildings or appurtenances, and a pro rata share of any tax imposed by the United States upon the gross receipts therefrom, which taxes the said party of the second part have either paid or may be liable to pay." The lease also contained an agreement on the part of the lessor to fence the road at its own cost, and a stipulation that the lessor should not be held accountable for any damages to third parties by reason of the road being unfenced, provided the fence should be built within a certain time. It also undertook to convey to the lessee, with warranty of title, a certain lot in the city of Boonville.

Under this lease rent had become due to the amount of $9,637, but the garnishee claimed the right to retain this amount in order to pay taxes, which had been assessed against the road to the amount of twelve thousand dollars and upwards, and to indemnify itself against loss by reason of the failure of the lessor to keep the stipulation about fencing, and by reason of failure of the title to the Boonville lot, and to re-imburse itself for several sums of money paid to other creditors of the defendant, under earlier garnishments. Upon the trial it appeared that the garnishee had fenced a small part of the road at its own cost, and evidence was offered to show that it had contracted for the fencing of another part, and intended to complete the whole as fast as it conveniently could. It also appeared that one Ells had brought an action of ejectment for the lot, and had recovered a judgment for $1,400 damages and costs, which had been paid by the garnishee. It also appeared that the garnishee had been previously garnished as debtor of the defendant in several cases,

and had been obliged to pay $1,840 in satisfaction of judgments in those cases; that in consequence of the road being unfenced, the garnishee had been compelled to pay to various persons whose stock had gotten upon the road and been killed $2,194; that the taxes, though assessed, had not been paid by the garnishee, and that defendant was insolvent. The court allowed the garnishee credits to the amount of $4,841 for the cost of the fences actually built, and the sums actually paid out as damages and costs in the Ells case, and under the prior garnishments, but refused to allow the items of taxes, damages paid for stock, and fences which the garnishee intended to build, but had not built, and gave judgment for the plaintiff for $4,796. The garnishee appealed.

During the progress of the case, a paper was filed by the representative of the holders of certain bonds, setting forth that they were secured by a mortgage on the road and property of the defendant company, given by defendant after the execution of the lease to the Pacific Railroad, and claiming that by virtue of this mortgage the bondholders were entitled to have the rental in the hands of the garnishee applied to the payment of their past-due coupons for interest; and the garnishee prayed that the court might adjudicate the claim of the bondholders. Plaintiffs denied the validity of this mortgage on the ground that the stockholders of the defendant company had never authorized its execution, and denied that the bondholders had any right to the rental.

*John Montgomery, Jr.* for appellant.

1. The liability of the garnishee to the creditor must, of course, be determined by the extent of its liability to the principal defendant; and whatever defense it could successfully make to the demand of the principal debtor to recover the sums of money in its possession, it may safely plead in the garnishment proceeding. The contract cannot be affected by the garnishment proceeding, or the

rights of the garnishee disturbed by it.   *Firebaugh v. Stone*, 36 Mo. 114.

In the construction of the contract it is material to consider the evident intent of the contracting parties, to be gathered from the whole instrument.   It seems to have been understood by both parties that taxes had then or would be assessed upon the demised property, and that the lessee would be called upon to pay them or be rendered liable therefor, and express reservation is made by the provision allowing the amount of these taxes to be deducted from the rental.   In leasing this property the lessor could not have supposed that thereby the lessee became in law personally liable for the payment of the taxes which were then due, or which would thereafter be levied.   There was no reason for such a presumption, but the fact was well known to both parties, and must be presumed to have been in view when the stipulation was made, that when the taxes were levied upon the demised property they constituted a lien upon it, and unless they were paid the lien thereon would be enforced and the lessee be compelled to pay them, to preserve its leasehold interest.   It would become liable to pay these taxes in that event, if it would preserve the leased property.   Of course these taxes could not, under the law as it then stood, be assessed as a personal liability or obligation of the lessee, but if to save the leased premises from sale and consequent eviction therefrom the lessee should pay the taxes, it cannot be doubted but that, without any express agreement in the lease, he could withhold it from the rent or maintain assumpsit to recover it from the lessor.   *Wells v. Porter,* 7 Wend. 120 ; Smith's Landlord and Tenant, side page 129, note 12.

But in this case there is a special contract that the lessee shall deduct from the rental all taxes levied, or to be levied upon the leased property.   Such a contract is unquestionably good, and many cases might be cited showing that similar contracts have been held binding and the garnishee entitled to his discharge, even though at the time

of the trial the liability was still undetermined and contingent. *St. Louis v. Regenfuss*, 28 Wis. 144: *Thompson v. Fischesser*, 45 Ga. 369; *Wheelock v. Tuttle*, 10 Cush. 123; *Shearer v. Handy*, 22 Pick. 417.

It is admitted that the taxes were not actually paid, but under the lease the lessee had a right to retain a sufficient sum to meet them. The evident intention of the parties was that the lessee should either pay them or retain sufficient of the rental to meet them.

2. The court erred in refusing to allow the appellant to retain sufficient of the funds shown to be in its hands to pay the cost and expenses of the construction of the fences, as stipulated in the lease between it and the Osage Valley & Southern Kansas Railroad Company. Upon an action by the lessor to recover the rental, the lessee would have a perfect right to plead the failure of the lessor to comply with the covenants in the lease, and set up his damages occasioned thereby as a set off, the lessor being insolvent. *Reppy v. Reppy*, 46 Mo. 572; *Davis v. Milburn*, 3 Iowa 163; *Lindsey v. Jackson*, 2 Paige Ch. 581.

3. The court erred in refusing to deduct from the sum of money found to be in the hands of the garnishee, the sum paid by it for stock killed by reason of the failure of the original defendant to fence the railroad as it covenanted and agreed to do.

4. The creditor cannot, by the process of garnishment, force the garnishee into any worse condition than it would be in if sued by the defendant, and such a demand on the part of the defendant could not be sustained. If the defendant were to institute an action to recover the very money here allowed the creditor by the court below, and after the institution of the suit the garnishee were to expend the sum in erecting the fences, or in paying the taxes, no court would hestitate about allowing the garnishee credit for the sums so expended; but the creditor by this process seeks to tie up the fund in the hands of the garnishee and compel it to hold it to satisfy the demands

he has against the original defendant. The garnishee answers in this action that it was proceeding to expend the money reserved for that purpose from the rental, in building the fences authorized by the lease, and had already expended eight hundred dollars of the sum, and would expend the whole as fast as it could arrange therefor. If this is not a complete answer, and if the creditor is to be allowed to take this fund, the garnishee and lessee is deprived of the benefit of the covenants in the lease which his foresight had so carefully provided, and must be left for its damages to an action against a worthless and insolvent lessor. The creditor is allowed to place the garnishee in a worse condition than it would be possible for the original defendant to do. If the sum in the hands of the garnishee is no more than would be necessary to complete the covenants in the lease, it is not liable to be garnished therefor. *Wheelock v. Tuttle,* 10 Cush. 123; *Robinson v. Hall,* 3 Metc. 301. The evidence in the court below presented this state of fact, or would, had it been admitted. The action of the court in excluding this testimony and refusing to allow the garnishee the credits, was clearly erroneous.

*John Cosgrove with Ewing, Smith & Pope* for respondent.

1. The appellant was not entitled to credit for taxes then assessed against the defendant in the execution. There was no law making the lessee or its assignee liable for the taxes at the time the judgment was rendered. This occurred before the act of March 29th, 1875, which would have had that effect.

2. The allegation in the answer, that the appellant " intended to fence the remainder of the road " of defendant in execution, should have been stricken out, and the court in disregarding it in determining the amount of money in appellant's possession, did not commit error. The appellant was credited with all money paid out by it, and for all money it was liable for up to the time of the trial.

3. The money garnished was due under the lease, and was subject to the payment of plaintiffs' judgments. Hilliard on Mortgages 210, §§ 35, 36; 1 Smith's Lead. Cas. (5 Am. Ed.) top pp. 667, 668, 692; 1 Washburn Real Prop. 130; 4 Kent Com. (12 Ed.) 165. It was a mere chose in action, and was subject to garnishment like any other property. *Gilmore v. Ills. & Miss. Tel. Co.*, 91 U. S. 603.

HENRY, J.—Whether the Osage Valley and Southern Kansas Railroad Company had capacity to execute the mortgage in question, and if it had, whether, under the mortgage, the mortgagee was entitled to the rents due from the Atlantic and Pacific Railroad Company, or which accrued after its execution, are questions which it is not necessary to determine in this cause, and would, therefore, be more appropriately decided in a suit between the mortgagee and the latter company. If the mortgage gave the mortagee a right to the rents, the plaintiffs were not entitled to the judgment they obtained. If it did not, then the question arises, was the Atlantic and Pacific Railroad Company entitled, under the lease, to retain, against the plaintiffs, an amount of money equal to the taxes assessed against the road? If so, the judgment must be reversed, because the court below ruled otherwise. It was an express stipulation in the lease, that the lessee should reserve of the rent an amount equal to the taxes assessed, or to be assessed against the property leased. It was of the nature of a contract of indemnity.

The lessee did not expressly agree to pay the taxes, but was liable to lose its interest in the road by a sale, if the taxes were not paid. The taxes then levied were, and those to be levied would be, a lien upon the road, and while the lessee did not expressly agree to pay them, the stipulation, was substantially an appropriation by the parties, of the reserved fund to the payment of that indebtedness, and the lessor, (or the mortgagee, if the mortgage be a

valid mortgage,) could, by a proper proceeding, compel the lessee so to apply the money.

But could the lessor have compelled the lessee to pay to it the amounts so reserved, without first paying the taxes? We apprehend not, and if not, it follows that its judgment creditors could, in a garnishment proceeding, recover against the lessee only what remained of the indebtedness in excess of the amount reserved. It is alleged in the answer of the garnishee, and not denied by plaintiffs, and therefore admitted, that the Osage Valley and Southern Kansas Railroad Company is insolvent, and that the taxes which, at the date of the garnishment, had been assessed against the property, amounted to about $12,000. If compelled to pay the whole amount of the rents to creditors of the lessor, the defendant must also either pay the taxes or lose its interest in the property by the sale of the same for the taxes. This would virtually annul the contract of the parties, and subject the defendant to a heavy loss, against which it had provided by that stipulation in the lease. The parties were competent to make that contract, and, as nothing is alleged against its validity, the court cannot annul or disregard it, or in any manner abridge defendant's rights under it. We are not without authorities to sustain these views. In the case of *St. Louis et al. v. Regenfuss*, 28 Wis. 145, it was held that "the garnishee is liable to the creditor to the same extent that he was liable to the defendant in the attachment suit before service of garnishee process. This is the limit of his liability." The facts of the case were that the garnishee had purchased of the debtor a tract of land for $1,200, of which he paid $950, and for the balance signed a note with the debtor as his surety, and that amount was retained of the purchase money. That note had not been paid by the garnishee, and yet the court held that the plaintiff was not entitled to a judgment against him for $250, or any other sum.

In *Firebaugh v. Stone*, Garnishee, 36 Mo. 114, the court

approved the doctrine laid down by Drake in his work on attachment, that " an attaching creditor can hold the garnishee only to the extent of the defendant's claim against the garnishee, and he can acquire no rights against the latter, except such as the defendant had, and he is not permitted to place the garnishee in any worse condition than he would occupy if sued by the defendant, and it follows necessarily that whatever defense the the garnishee could urge against an action by the defendant for the debt, in respect of which he is garnished, he may set up in bar of a judgment against him as garnishee."

In *Scales et al. v. The Southern Hotel Co.*, 37 Mo. 524, the court observes that " in order that an indebtedness may be liable to garnishment, it must be shown to be absolutely due as a money demand, unaffected by liens or prior incumbrances, or conditions of contract." As the taxes, together with the amounts properly allowed by the court to the garnishee, exceeded in amount the arrears of rent, it is unnecessary to pass upon the other matters of set-off and recoupment, relied upon by defendant.

All concurring, the judgment is reversed, and cause remanded.

REVERSED.